**WELCH v. SOLOMON.**

No. 8804.

Circuit Court of Appeals, Ninth Circuit.

Sept. 14, 1938.

James W. Morris, Asst. Atty. Gen., Sewall Key, A. N. Angevine, J. Louis Monarch, and Louise Foster, Sp. Assts. to Atty. Gen., and Ben Harrison, U. S. Atty., E. H. Mitchell, and Alva C. Baird, Asst. U. S. Attys., and Eugene Harpole, Sp. Atty., Treasury Dept., all of Los Angeles, Cal., for appellant.

Claude I. Parker, Ralph W. Smith, Ralph Kohlmeier, and Harriet Geary, all of Los Angeles, Cal., for appellee.

Before GARRECHT, STEPHENS, and HEALY, Circuit Judges.

STEPHENS, Circuit Judge.

This is an appeal from a judgment of the District Court in the amount of $1,803.67. The judgment was entered in appellee's favor in an action brought by him pursuant to § 3226 of the Revised Statutes, 17 Stat. 257, 26 U.S.C.A. §§ 1672–1673, and § 24(5) of the Judicial Code, 28 U.S.C.A. § 41(5), for the recovery of Federal income taxes and interest for the calendar years of 1924 and 1925, which taxes and interest were paid to appellant in his capacity as Collector of Internal Revenue for the Sixth District of California. On March 13, 1931, claims for refund of said income taxes and interest were filed by appellee with the Commissioner and thereafter, on May 27, 1931, said claims were rejected, whereupon this action was commenced December 9, 1931. The case was tried by the court without a jury, trial by jury having been expressly waived.

The evidence consists of a stipulation of facts and of testimony given by the appellant. The pertinent facts thus established are as follows:

In 1920 a trust known as Wilshire Crest Syndicate (hereinafter referred to as "Syndicate") was created by a declaration of trust, of which the Title Insurance and Trust Company was the trustee. This trust was organized for the purpose of subdividing a tract of land in the City of Los Angeles. The Syndicate was in existence at all times subsequent to the year 1920, to and including the year 1927.

On September 1, 1920, the Syndicate acquired, for the purpose of subdivision and resale at a profit, a tract of land known as Wilshire Crest Tract. Thereafter the tract was subdivided and sale of the lots therein, the taxability of the profit from the sale of which is here in controversy, was accomplished in the years 1922 and 1923. More than 25 per centum and less

than the total sale price of each of the lots was paid in the year of their sale, purchase contracts being taken for the balance. Each of these contracts had a readily realizable market value equal to 30 per centum of the face amount thereof.

At the time of the organization of the trust, appellee acquired an 18/300ths beneficial interest therein, and held the same continuously from that time through and including the years 1924 and 1925 here involved. Appellee acquired and held this interest for profit. Appellee at no time personally gave his attention to the business of selling real estate.

Subsequent to the enactment of the Revenue Act of 1928 the Title Insurance and Trust Company, as trustee of said Syndicate, elected under the provisions of § 704(b)[1] of the Revenue Act of 1928, 45 Stat. 880, to have the Syndicate taxed as a trust and not as an association.

Appellee filed Federal income tax returns for the years 1922, 1923, 1924 and 1925 and reported therein as income taxable at capital gain rates the amounts distributed to him from the Syndicate. Taxes were paid on these amounts. Subsequently, deficiencies were assessed and collected from appellee by reason of the denial of the advantage to him of such capital gain rate. These deficiencies together with interest thereon were paid to appellant.

The sole question presented on this appeal is whether appellee is entitled to have the income which he received from the Syndicate in 1924 and 1925 taxed at the rate for capital gains rather than at the rate for ordinary net gains.

Section 208[2] of the Revenue Act of

[1] "(b) For the purpose of the Revenue Act of 1926 and prior Revenue Acts, a trust shall, at the option of the trustee exercised within one year after the enactment of this Act, be considered as a trust the income of which is taxable (whether distributed or not) to the beneficiaries, and not as an association, if such trust (1) had a single trustee, and (2) was created and operated for the sole purpose of liquidating real property as a single venture (with such powers of administration as are incidental thereto, including the acquisition, improvement, conservation, division, and sale of such property), distributing the proceeds therefrom in due course to or for the benefit of the beneficiaries, and discharging indebtedness secured by the trust property, and (3) has not made a return for the taxable year as an association."

[2] "Sec. 208. (a) For the purposes of this title—

"(1) The term 'capital gain' means taxable gain from the sale or exchange of capital assets consummated after December 31, 1921;

"(2) The term 'capital loss' means deductible loss resulting from the sale or exchange of capital assets;

"(3) The term 'capital deductions' means such deductions as are allowed by section 214 for the purpose of computing net income, and are properly allocable to or chargeable against capital assets sold or exchanged during the taxable year;

"(4) The term 'ordinary deductions' means the deductions allowed by section 214 other than capital losses and capital deductions;

"(5) The term 'capital net gain' means the excess of the total amount of capital gain over the sum of (A) the capital deductions and capital losses, plus (B) the amount, if any, by which the ordinary deductions exceed the gross income computed without including capital gain;

\* \* \* \* \* \*

"(8) The term 'capital assets' means property held by the taxpayer for more than two years (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale in the course of his trade or business.

"(b) In the case of any taxpayer (other than a corporation) who for any taxable year derives a capital net gain, there shall (at the election of the taxpayer) be levied, collected and paid, in lieu of the taxes imposed by sections 210 and 211 of this title, a tax determined as follows:

"A partial tax shall first be computed upon the basis of the ordinary net income at the rates and in the manner provided in sections 210 and 211, and the total tax shall be this amount plus 12½ per centum of the capital net gain.

\* \* \* \* \* \*

"(d) The total tax determined under subdivision (b) or (c) shall be collected and paid in the same manner, at the same time, and subject to the same provisions of law, including penalties, as other taxes under this title."

"(e) In the case of the members of a partnership, of an estate or trust, or of the beneficiary of an estate or trust, the proper part of each share of the net income which consists, respectively, of ordinary net income, capital net gains, or capital net loss, shall be determined under

1924, 43 Stat. 262, 263, which contains the provisions applicable here, allows a taxpayer to have the tax computed on his capital net gain at the rate of 12½ per centum. The same section provides the method for computation of the tax. Subsection (a) (5) of § 208 defines "capital net gain" as the excess of the total amount of capital gains over the sum of certain specified deductible items. By § 208(a) (1) the term "capital gain" means "taxable gain from the sale or exchange of capital assets consummated after December 31, 1921." In § 208(a) (8) the term "capital assets" is defined as "property held by the taxpayer for more than two years * * * but does not include * * * property held by the taxpayer primarily for sale in the course of his trade or business."

Appellant urges two principal arguments in support of his position that the income derived by taxpayer from the sale of the property in question was not a "capital gain" and that consequently, contrary to the holding of the District Court, taxpayer was not entitled to the advantage of the capital gain tax rate. Both attacks are directed at the conclusion of the District Court that the property involved was a "capital asset" within the meaning of § 208(a) (8). It is first asserted that there is a failure of proof that appellee held the land for more than two years before the sale thereof. It is argued that because legal title to the land sold was in the Syndicate the land was not held by appellee. Appellant's second contention is, that even if it be assumed that the land was "held" by appellee, it still cannot be treated as a "capital asset" since it has not been shown that it was not held by him "primarily for sale in the course of his trade or business." The argument is that since the Syndicate was in the business of selling the tract of land as to which it held title its activities in this regard should be imputed to the taxpayer.

We need not decide whether the taxpayer was the "holder" of the property since we are in agreement with appellant that even if it be so assumed the judgment must nevertheless be reversed. This court has previously held in Richards v. Commissioner, 9 Cir. 1936, 81 F.2d 369, 106 A.L.R. 249, a case involving a factual situation similar to that here present, that the beneficiary of a trust was engaged in the business of selling real estate within the broad definition of "business" approved by the Supreme Court in Von Baumbach v. Sargent Land Co., 242 U.S. 503, 515, 37 S. Ct. 201, 204, 61 L.Ed. 460,[3] although, as was stipulated, "the petitioner, himself, [had] never taken part in the subdivision or the sale of the lots in the subdivisions * * *." [page 371.] We think that the decision in the Richards Case was correct and see no reason for departing from its authority. The personal attention which a taxpayer gives to a business is certainly not decisive as to whether a resulting profit is ordinary income or capital gain. One may conduct a business through others, his agents, representatives, or employers. The business is nonetheless his because he chooses to let others bear all of the burdens of management. Appellee takes an illogical position when he argues, as he must, that the property was "held" by him rather than by the trust, while in the same breath rejecting the notion that the subdivision, improvement and sale of his property, at his expense, constituted any business of his. If we are to disregard the trust entity in order to consider the beneficiary as the "holder" of the property, it is likewise to be disregarded in determining to whom the activities of subdivision, improvement and sale of the property should be attributed.

However, even if the business of subdivision and sale of the property is to be considered as that of the trust rather than that of the beneficiaries, nonetheless the profit here involved cannot be considered a capital gain in the hands of appellee.

Section 208(e)[4] of the Revenue Act of 1924, 43 Stat. 263, and Regulation 65, Art. 1653,[5] promulgated under authority

---

rules and regulations to be prescribed by the Commissioner with the approval of the Secretary, and shall be separately shown in the return of the partnership or estate or trust, and shall be taxed to the member or beneficiary or to the estate or trust as provided in sections 218 and 219, but at the rates and in the manner provided in subdivision (b) or (c) of this section."

[3] " * * * 'that which occupies the time, attention, and labor of men for the purpose of livelihood or profit,' " quoting from Flint v. Stone Tracy Co., 220 U.S. 107, 31 S.Ct. 342, 55 L.Ed. 389, Ann.Cas.1912B, 1312.

[4] See footnote No. 2, supra.

[5] "Partnerships, estates and trusts.— Members of a partnership may, with respect to any capital net gain, elect to be taxed as provided in section 208. Similarly, estates or trusts or the beneficiar-

of this section, extend to the beneficiary of a trust the benefit of the capital gains rate where the income distributed is capital gain to the trust. It has been held in construing this section that though under the terms of the trust and the law of the state, income is distributable to a beneficiary only as a dividend on the trust corpus, it nevertheless is a capital gain to the beneficiary if in fact it results from the conversion of a capital asset. Letts v. Commissioner, 30 B.T.A. 800, affirmed, 9 Cir. 1936, 84 F.2d 760; McNaghten v. United States, Ct.Cl. 1937, 17 F.Supp. 509. Conversely, we think that where income is "ordinary income" to a trust it retains the same character on distribution to the beneficiary, at least in a case such as this, where, under the provisions of § 704(b)[6] of the Revenue Act of 1928, the income is taxable to the beneficiary whether distributed to him or not.

The case of Phipps v. Commissioner, 2 Cir. 1931, 54 F.2d 469, is not in conflict with the present holding, the decision in that case being based on the conclusion that in the years in which the sales were made there had been no activity sufficient to amount to a "business" within the meaning of the statute. In the case of Pope v. Commissioner, 6 Cir. 1935, 77 F.2d 599, it does not appear that the precise point here involved was presented to the court, but insofar as that decision may be in conflict with our own we refuse to follow it.

The judgment of the District Court is reversed.

ies thereof may elect to be taxed as provided in section 208 with respect to any capital net gain. Where the net income of a partnership, estate or trust consists in whole or in part of capital net gain, there shall be attached to the return (upon the request of any member or beneficiary, or without such request, at the election of the fiduciary of an estate) a statement showing (1) all items of capital gain, capital loss, and capital deductions, as provided in article 1652, and (2) the names of members or beneficiaries and the amounts of their respective shares in such capital net gain, or capital net loss."

[6] See footnote No. 1, supra.