## CALDWELL v. UNITED STATES.

### Nos. 6699, 6700.

Circuit Court of Appeals, Seventh Circuit.

March 8, 1939.

608

Willis H. Hutson, Lawrence C. Traeger, and John D. Bolger, all of Chicago, Ill., and Forest P. Tralles and Fred J. Hoffmeister, both of St. Louis, Mo., for appellant.

Arnold Raum, Sewall Key and L. W. Post, Sp. Assts. to Atty. Gen., James W. Morris, Asst. Atty. Gen., Michael L. Igoe, U. S. Atty., and David L. Bazelon, Asst. U. S. Atty., both of Chicago, Ill., and William J. Campbell, of Chicago, Ill., for the United States.

Before MAJOR, TREANOR, and KERNER, Circuit Judges.

MAJOR, Circuit Judge.

These appeals are from judgments of the District Court denying plaintiff's claim for a refund of income tax. Cause No. 6699 involves such tax in the amount of $5,985.11 for the year 1928, and Cause No. 6700 in the amount of $6,500.29 for the year 1929. The facts were stipulated and substantially the same questions are involved in each appeal. They will, therefore, be considered together.

The plaintiff is a sole surviving beneficiary and was the executor of the estate of his wife, Pauline W. Caldwell, who was the granddaughter of Paul Brown, and a legatee under his last will and testament. Paul Brown died testate November 18, 1927, being at the time of his death a resident of the City of St. Louis and State of Missouri. Letters testamentary were issued November 22, 1927, by the Probate Court of that city.

In Item 21 of his will, a one-sixth interest of all the residue and remainder of his estate was bequeathed and devised to each of the following persons: Inez Herford Brown, wife; Julia Radford, Georgie Pauline Blosser and Nellie Perkins Keller, daughters; Pauline W. Caldwell, granddaughter and deceased wife of plaintiff, and the Mercantile Trust Company, in trust for the benefit of the children of Paul Brown, Jr., a deceased son.

In Clause 20 of Item 21, it is directed that all inheritance, estate, transfer or succession taxes assessed against the trust estate established for the benefit of the children of Paul Brown, Jr., deceased, shall be paid out of the principal of the trust estate. In Item 1 of the codicil to Paul Brown's will, the testator expressed the wish that the final settlement of his estate be not made until three years after his death. The executors were instructed "to retain the residuary estate provided for in Item 21 of my said last will and testament, for a period of three years after my death, at which time the distribution of my said residuary estate shall be made to the persons and corporations named in said Item 21." The executors, during that period, were given the same powers and authority "with reference to control, management and disposition, that I have given unto the trustee in the trust created for the benefit of the children of Paul Brown, Jr." The codicil further, after empowering the executors to make investments and reinvestments in their sole discretion, contains the following clause: "And I direct my Executors to pay over the net income and revenue received by them from the property and securities in their hands, from the date of my death until the final settlement of my estate, unto the beneficiaries named in Item Twenty-One of my said last will and testament; in the same proportions and the same manner as

therein provided, in as nearly equal monthly installments as possible; the payments to begin on the fifteenth day of the second month after my death."

The fair market value of assets of the estate at the date of his death was some $14,000,000, but in the probate proceedings such assets were valued at something more than $7,500,000. On July 18, 1928, the executors filed their first settlement with the Probate Court in which the value of the assets of the estate was placed at $6,368,000. Semi-annual reports were made thereafter in each of which the value of the assets was placed at something less than $5,000,000, until the last report made on December 4, 1930, which disclosed such assets to be worth $5,148,000. All of the specific bequests under the will were satisfied prior to July 18, 1928. Also, prior to that time, all known claims except those for additional estate and federal taxes were paid.

At the time of his death, Paul Brown was a member of the stock brokerage firm of Paul Brown and Company, and under the terms of the partnership agreement, surviving partners elected to continue the business, and the estate of Paul Brown became a limited or special partner in said brokerage firm and so continued for a period of two years subsequent to November 18, 1927.

The net income from the residuary estate for the year 1928 was $681,520.91, including the sum of $88,563.32 due and owing to the estate from the partnership of Paul Brown and Company. This latter amount, however, was not actually received by the estate until January 21, 1929. During the year 1928, the estate paid a total of $894,415.58 in estate inheritance taxes and federal estate taxes. After deducting commissions for services in collecting and distributing the income from the residuary estate, all of the income was distributed to the beneficiaries in accordance with the terms of the will. Payments were made to the legatees on an installment basis and were included in the settlements or reports filed by the executors and approved by the Probate Court. Plaintiff's decedent's share of the 1928 net income from the residuary estate of her grandfather was $111,549.32, which amount was included in her taxable income for 1928 upon which the tax in controversy was assessed. The executors employed a system of bookkeeping by which all items of income were credited to income account and all disbursements made by the executors for inheritance and estate taxes were charged to capital. The installment payments made to the various legatees during the year 1928 were charged on such books against the income account.

The same procedure was followed during the year 1929—the income from the estate, the distribution made and the amount included in plaintiff's decedent's income tax return were substantially the same as in 1928. Inasmuch as only questions of law are to be determined, the exact figures for 1929 are not essential. This distinction is pointed out in that the income derived from the partnership of Paul Brown and Company was actually received by the estate in 1929, while the income from such partnership was not actually received in 1928.

In each case, the essential question presented is: Was the amount distributable in 1928 (or 1929) to plaintiff's decedent as a beneficiary of the estate of Paul Brown, deceased, and actually received by her, properly included in her taxable income for the year in question, although payments by the estate during such year for federal estate and estate inheritance taxes exceeded the net income distributable to the beneficiaries? In addition to this question, applicable to the tax for both years, there is the further question as to the tax paid for the year 1928: Was that portion of the estate's share of the distributable profits of the partnership of Paul Brown and Company, not actually received by it until the following year, to be treated as distributable income of the estate for the taxable year so as to require inclusion in the income of the beneficiaries? The court below, as to the 1928 tax, made the following conclusion of law: "That, under the Will, the sum of $681,520.91 was properly distributable by the executors in 1928 to the beneficiaries of the residuary estate, including the plaintiff's decedent, as the 1928 income and revenue from the residuary estate, even if the estate had no statutory net income as the result of the payment of Federal estate taxes and state inheritance taxes." The same conclusion (except as to amounts) was made as to the year 1929. It is about this conclusion that the involved controversy largely revolves.

It is the contention of the plaintiff that inasmuch as the total income of the Paul

Brown estate for each of the years in question was far less than the total amount paid by the executors thereof in estate and inheritance tax, that the estate had no net income during either of these years; and it must be held that distributions made during those years were from the corpus of the estate rather than from income and are, therefore, not taxable to the legatees. There is no dispute but what such taxes paid by the estate for the years in question exceeded such income, but it is contended by the defendant that under the express language of the testator's will, the executors were without authority to pay such taxes or any part thereof from said income, but were charged with the duty of distributing the income among the six legatees, including a one-sixth part to plaintiff's decedent.

Such contention necessitates a reference to material clauses of the will, which we have heretofore related. It seems there is little room for doubt but what the testator, by the codicil to his will, directed that the residuary estate be preserved by the executors for a period of three years and that no distribution thereof be made during that time. It seems equally plain that it was the purpose of the testator to provide for these legatees, all members of his family, during the period he had placed an inhibition upon the distribution of the residuary. To be certain this purpose was accomplished, he directed that disbursements be made, not yearly, but in monthly installments, to begin on the 15th day of the second month after his death. It is argued that by use of the words "to pay over the net income and revenue" it must be held that the estate's income should have first been applied to the payment of all proper charges against the estate, including the inheritance and estate taxes. If so, there would have been no "net income" for distribution. We do not think, however, this language is susceptible of such a construction. The words "net income," no doubt, had reference to that portion of the income remaining after deducting the ordinary expenses which might be incurred in its collection. To conclude otherwise would be inconsistent with his expressed intention to care for his family while his estate was in the course of administration. But in addition to this, the language of the will itself negatives such a construction. In his codicil, the testator confers upon his executors, during the three-year period, wherein the estate is committed to their care, the "same powers and authority, with reference to the control, management and disposition, that I have given unto the trustee in the trust created for the benefit of the children of Paul Brown, Jr." Clause 20 of Item 21 contains the direction "that all inheritance, estate, transfer or succession taxes assessed * * * against the trust estate herein established for the benefit of the children of my son, Paul Brown, Jr., shall be paid out of the principal of the trust estate." Thus, it would seem there can be no doubt but what the testator intended to and did direct that inheritance and estate taxes be paid by the executors from the corpus of his estate rather than from income.

We, therefore, have no hesitation in concluding that the executors were without discretion in the matter of making distribution of the estate's income in the manner in which they did. To have done otherwise would have been in violation of the plain terms of the will.

Having thus concluded, the premise upon which plaintiff's argument largely rests is destroyed, and the cases relied upon are distinguishable. What is termed by plaintiff as its principal authority is that of Sitterding v. Commissioner of Internal Revenue, 4 Cir., 80 F.2d 939. It is true that the court was there dealing with a situation quite similar to that here. The estate had an income less than estate and federal taxes properly chargeable to it. The court held that under Section 23 of the Revenue Act of 1928, 26 U.S.C.A. § 23, the estate was entitled to deduct such taxes, which left no net income, and, as a result, such distributions as were made to the beneficiaries were from corpus rather than income, and, therefore, not taxable to such beneficiaries. In that case, however, the testator made no provision for the payment of income to the legatees during the course of administration of the estate, but merely provided for them a residuary interest in the same. There was nothing to preclude the executors from applying the income to the payment of taxes, thereby producing a situation by which there was no income for distribution. Under such circumstances, the distributions, as made, were of necessity from the corpus and, therefore, not taxable in the hands of the legatees. As the court said on page 941:

"It is not possible, therefore, to say that the distribution to the taxpayer was income and not merely an advance on account of the corpus." In the instant matter, an opposite situation is presented. The executors acted in conformity with the terms of the will and they had no right to do otherwise. The testator himself labeled the distributions made to his legatees as income and they must be so regarded.

The case of McCahan v. Commissioner, 35 B.T.A. 943, relied on by plaintiff, is distinguishable for the same reason as the Sitterding case, supra. Again, unlike the instant case, there was nothing in the will requiring that the estate's income, undiminished by payments of estate and inheritance taxes, be paid to the beneficiary. Therefore, the executrix was held justified in using income to pay such taxes and to make distribution to the beneficiary from the corpus of the estate. Such distribution was not income and consequently not taxable as such.

It is interesting to note that suits for refund of taxes paid to various legatees from the estate of Paul Brown have been filed and heard in two jurisdictions other than the instant suit. Brown v. U. S., D.C., 21 F.Supp. 214, was heard in the Eastern District of Missouri, and Blosser v. U. S.,[1] D.C., 1937 C. C. H., Vol. 4, par. 9370, in the Western District of Missouri. In the Brown case, the claim for refund was denied, and the court in some detail, analyzes and distinguishes a number of cases relied upon here, as well as designating various sections of the Revenue Act held to be applicable. It would serve no useful purpose for us to repeat what was there said. It is sufficient for us to state that we agree, both with the reasoning employed and the conclusion reached. In the Blosser case, supra, so far as appears from the memorandum opinion, no consideration was given to the terms of the testator's will directing that the net income be distributed to the legatees during the course of administration. In fact, it appears that the principal question raised by the Commissioner in that case was whether during the years in question, "the estate * * * was in the process of administration" within the meaning and intent of Section 162(c) of the Revenue Act of 1928, 26 U.S.C.A. § 162(c). We think the court reached the proper conclusion insofar as it applies to that particular question, which is not urged as a defense in the instant suits.

■ Plaintiff also makes a contention applicable to only a small portion of the claimed refund to the effect that since the partnership income for 1928 was not actually received by the executors of the estate during that year, that plaintiff's decedent was not taxable on her part of the same. The court, in Brown v. United States, supra, page 216, decided to the contrary and, we think correctly so. Section 182 of the Revenue Act of 1928, 26 U.S.C.A. § 182, provides: "There shall be included in computing the net income of each partner his distributive share, whether distributed or not, of the net income of the partnership for the taxable year." Under this language, the estate was properly charged with this distributive share from the partnership for the year in question, notwithstanding the fact such share was not actually received until the following year. Paragraph (c) of Section 162 of the same Revenue Act provides: "In the case of income received by estates of deceased persons during the period of administration or settlement of the estate, * * * there shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year, which is properly paid or credited during such year to any legatee, heir, or beneficiary, but the amount so allowed as a deduction shall be included in computing the net income of the legatee, heir, or beneficiary." By virtue of this provision, it is immaterial when such income was actually distributed. It is sufficient, if the allocation be made during the taxable year.

It is our opinion that the District Court reached the proper conclusion in each of the cases and the judgments are, therefore, affirmed.

---

[1] No opinion for publication.